UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE-OPELOUSAS DIVISION

| | | |
|---|---|---|
| **NANCY B. PICOU** | * | **CIVIL ACTION NO. 06-2340** |
| **VERSUS** | * | **JUDGE MELANÇON** |
| **COMMISSIONER OF SOCIAL SECURITY** | * | **MAGISTRATE JUDGE HILL** |

## REPORT AND RECOMMENDATION

This social security appeal was referred to me for review, Report and Recommendation pursuant to this Court's Standing Order of July 8, 1993. Nancy B. Picou, born May 22, 1954, filed an application for supplemental security income on December 3, 2004 alleging disability as of March 1, 2004, due to asthma, bronchitis, and arthritis.

## FINDINGS AND CONCLUSIONS

After a review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. § 405(g), I find that there is substantial evidence in the record to support the Commissioner's decision of non-disability and that the Commissioner's decision comports with all relevant legal standards. *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

In fulfillment of F.R.Civ.P. 52, I find that the Commissioner's findings and conclusions are supported by substantial evidence, which can be outlined as follows:

**(1) Records from Dr. Monty Rizzo dated November 8, 2000 to September 15, 2005**.  Claimant was seen for headaches, veritgo, asthma, and sinus problems. (Tr. 96-105; 150-55).  A CT of the sinuses dated November 9, 2000, showed mild compromise of the right maxillary ostium with some resulting fluid in the right maxillary antrum, as well as a mucous retention cyst, and a deviated nasal septum and right middle turbinate concha bullosa.  (Tr. 104).  Chest x-rays were within normal limits.  (Tr. 100).

A repeat CT of the sinuses dated June 8, 2004, showed mild left maxillary sinus disease.  (Tr. 97).

**(2) Records from Dr. Carl M. Ditch dated May 21, 1999 to March 31, 2006**. Pulmonary function studies dated May 22, 1999, showed that claimant had an FEV1 of 2.25 liters pre-bronchodilator and 2.45 post-bronchodilator.[1]  (Tr. 118).  She was 64 inches tall and weighed 218 pounds.  Her FEV1 ranged from 1.74 to 2.15 on October 30, 2003.  (Tr. 114).

---

[1] The listings for asthma require evaluation under the criteria for chronic obstructive pulmonary disease in § 3.02A. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 3.03.  Under § 3.02A, a claimant 64-65 inches tall must have an FEV1 equal to or less than 1.25 (L, BTPS).

On December 5, 2002, claimant complained of pain in the buttocks, with sharp pains shooting up and down into the leg. (Tr. 117). Her medications included Singulair, Prozac, Advair, a nebulizer, Darvocet, and Prozac. (Tr. 107, 117). She continued to complain of pain on March 20, 2003, and November 4, 2004. (Tr. 107, 116).

A DXA scan showed osteopenia of the hip and osteoporosis of the lumbar spine. (Tr. 112, 156-59).

On March 31, 2006, Dr. Ditch wrote that he was treating claimant for asthma, osteoarthritis, and depression. (Tr. 163). Her medications included Prozac, Advair, Singulair, Flonase, and Actonel. She was taking nebulizer treatments four times a day. Her asthma was controlled with medications and nebulizer treatments.

A stress test performed on March 27, 2006, revealed poor CV fitness, no chest pain or ST depression, and negative ischemia.

**(3) Consultative Examination by Dr. Kenneth A. Ritter dated February 1, 2005**. Claimant complained of asthma with episodes of wheezing three to four times a week, frequent bronchitis episodes, low back pain when doing a lot of walking and bending, radiating pain down the sides of both legs and occasionally into her left groin and down to the left foot area, and intermittent knee pain. (Tr. 119). Her medications included Actonel, Prozac, Flonase, Advair, Singulair, and Deconamine.

She also took Ipratropium and Albuterol as need through a home nebulizer. She had allergy shots given every week.

Dr. Ritter estimated claimant's intelligence as average. On examination, she was 5 feet 5 inches tall, and weighed 233 pounds. (Tr. 120). Dr. Ritter described her as very obese.

Claimant had a normal gait and station. She had negative straight-leg raises bilaterally. She had 1+ pitting edema in the anterior ankle areas. Her low back range of motion appeared normal. DP pulses were 1+ and equal bilaterally. Neurologically, claimant was intact with normal DTRs, strength, and sensation.

Chest x-rays revealed an increase in claimant's heart size and lung fields. (Tr. 121).

Dr. Ritter's impression was significant obesity, gastroesophageal reflux symptoms secondary to obesity, and a history of chronic asthma.

In the Medical Assessment of Ability to do Work-Related Activities (Physical), Dr. Ritter determined that claimant could lift/carry 25-35 pounds occasionally and 20-25 pounds frequently. (Tr. 123). He found that she could stand/walk about 4 to 7 hours in an 8-hour day, and 2 to 3 hours without interruption. Her ability to sit was not affected by her impairment.

Dr. Ritter found that claimant could occasionally climb, stoop, and kneel, frequently balance, and rarely to occasionally crouch and crawl. He determined she had restrictions from exposure to dust and fumes. (Tr. 124).

**(4) Residual Functional Capacity Assessment (Physical) dated February 22, 2005**. The examiner determined that claimant could occasionally lift/carry 20 pounds and frequently lift/carry 10 pounds. (Tr. 128). She could stand/walk about 6 hours in an 8-hour workday, but had to periodically alternate sitting and standing to relieve pain or discomfort. She had unlimited push/pull ability.

Claimant could frequently climb ramps/stairs, balance, kneel and crawl; occasionally stoop and crouch, and never climb ladders/ropes/scaffolds. (Tr. 129). She was to avoid all exposure to fumes, odors, dusts, gases, poor ventilation, and hazards such as machinery and heights. (Tr. 131).

**(5) Records from Dr. J. Darvin Hales dated February 22, 1999 to January 6, 2006**. Dr. Hales treated claimant for chest tightness, shortness of breath, wheezing, and asthma. (Tr. 136-49). Pulmonary function studies dated February 22, 1999, revealed an FEV1 of 2.24 pre-bronchodilator and 2.28 post-bronchodilator. (Tr. 149). Chest x-rays dated August 2, 2005 showed no significant cardiopulmonary findings. (Tr. 148).

On August 18, 2005, spirometry revealed a pre-bronchodilator FEV1 reading of 1.83 and post-bronchodilator of 2.04. (Tr. 147). Testing on September 27, 2005, showed an FEV1 of 1.74 pre-bronchodilator, and 1.9 post-bronchodilator. (Tr. 143). On January 6, 2006, claimant's readings were 1.43 pre-bronchodilator, and 1.77 post-bronchodilator. (Tr. 137).

**(6) Report from Dr. Rizzo dated April 12, 2006**. Dr. Rizzo stated that claimant had been on weekly allergy injections since March 9, 2001, to help reduce her symptoms that might cause an asthma attack. (Tr. 167). He reported that she was still having to use her nebulizer four times a day to help the tightness in her chest. He opined that she would benefit from working in an environment that was well-ventilated and smoke-free.

**(7) Claimant's Administrative Hearing Testimony**. At the hearing on March 23, 2006, claimant was 51 years old. (Tr. 171). She had obtained a GED, and had some vocational training in accounting. She had past work experience at Wal-Mart and as a change person at the casino.

Claimant testified that she was 5 feet 4 inches tall and weighed 230 pounds. (Tr. 172). She complained of asthma, problems in the back and hips, and joint pain. She reported that she could not stand, sit, or walk for very long.

Claimant stated that she took asthma treatments every four hours, which lasted 15 minutes to half an hour. (Tr. 172, 179). She took Actonel and calcium for her osteoarthritis. (Tr. 173). She said that she had asthma attacks at least three or four times a week. (Tr. 175). She testified that her medications made her jittery. (Tr. 178).

Claimant reported that she had left her job at the casino because the cigarette smoking was bad for her asthma. (Tr. 175). She stated that she had gotten rid of her carpet and curtains at home, and had put an air purifier in her bedroom.

Regarding limitations, claimant stated that she could not kneel or pick up anything heavy. (Tr. 176). She reported that she had limited walking ability. She also complained that sitting for extended periods caused pain in her left leg and hip. (Tr. 177). Additionally, she had problems climbing stairs. She said that she could drive when she had to. (Tr. 179).

**(8) Administrative Hearing Testimony of Thomas LaFosse, Vocational Expert ("VE")**. Mr. LaFosse described claimant's past work as a cashier at Wal-Mart as light and semi-skilled, and sales clerk as light and unskilled. (Tr. 180). He classified her position as a gambling cashier as light and semi-skilled.

**(9) The ALJ's findings are entitled to deference**. Claimant argues that: (1) the ALJ erred in failing to give proper weight to the opinion of her treating physician,

7

and (2) the ALJ failed to make proper use of the vocational expert in this case.

As to the first argument, claimant asserts that the ALJ erred in finding that she could maintain competitive gainful activity in light of her treating physicians' opinions that she had to take four nebulizer treatments a day and had postural limitations. [rec. doc. 8, pp. 4-8].

It is well established that the opinion of a treating physician who is familiar with the claimant's impairments, treatments and responses, should be accorded great weight in determining disability. *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000); *Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994), *cert. denied*, 514 U.S. 1120, 115 S.Ct. 1984, 131 L.Ed.2d 871 (1995). A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and *is not inconsistent with ... other substantial evidence.*" (emphasis added). *Newton,* 209 F.3d at 455 (citing 20 C.F.R. § 404.1527(d)(2)). Good cause for abandoning the treating physician rule includes disregarding statements by the treating physician that are brief and conclusory, not supported by medically accepted clinical laboratory diagnostic techniques, or otherwise unsupported by evidence. *Leggett*, 67 F.3d at 566; *Greenspan*, 38 F.3d at 237.

In this case, the ALJ specifically considered all of the treating physicians' records, including Dr. Rizzo's and Dr. Ditch's indicating that she was taking four nebulizer treatments four times a day. (Tr. 14-15, 163, 167). Dr. Rizzo's only recommendation was that claimant should work in a well-ventilated and smoke-free environment. Further, Dr. Ditch noted that claimant's asthma was controlled with medications and nebulizer treatments. (Tr. 163). If an impairment reasonably can be remedied or controlled by medication, treatment or therapy, it cannot serve as a basis for a finding of disability. *Johnson v. Bowen*, 864 F.2d 340, 348 (5th Cir. 1988); *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987).

As to claimant's postural limitations, the medical records from claimant's treating physicians, as well as the consultative examiner, Dr. Ritter, support the ALJ's finding that claimant was capable of performing her past relevant work. Dr. Ritter found that claimant could lift/carry 25-35 pounds occasionally and 20-25 pounds frequently; stand/walk about 4 to 7 hours in an 8-hour day, and 2 to 3 hours without interruption; had unlimited ability to sit, and could occasionally climb and stoop, frequently balance, and could rarely to occasionally crouch and crawl. (Tr. 123). The only other limitation he found was that she should avoid exposure to dust and fumes. (Tr. 124). Neither the consultative nor the treating physicians had indicated that her impairments were disabling. *See Vaughan v. Shalala*, 58 F.3d 129, 131 (5th Cir.

1995) (substantial evidence supported ALJ's finding that claimant could perform a wide range of sedentary work where no physician who examined her pronounced her disabled). Further, as the ALJ pointed out, claimant was able to perform her past work while she received nebulizer treatments. (Tr. 14). Accordingly, the ALJ's finding regarding claimant's ability to return to her past relevant work is entitled to deference.

Finally, claimant argues that the ALJ erred in failing to properly use the vocational expert at the hearing. [rec. doc. 8, pp. 8-9]. Specifically, claimant argues that the ALJ only described claimant's past work. However, the ALJ is not required to obtain vocational expert testimony when he determines that claimant can perform her past relevant work. *Harper v. Sullivan*, 887 F.2d 92, 97 (5th Cir. 1989). Thus, this argument lacks merit.

Based on the foregoing, it is my recommendation that the Commissioner's decision be **AFFIRMED** and that this action be **DISMISSED** with prejudice.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of

any objections or responses to the District Judge at the time of filing.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FACTUAL FINDINGS AND/OR THE PROPOSED LEGAL CONCLUSIONS REFLECTED IN THIS REPORT AND RECOMMENDATION WITHIN TEN (10) DAYS FOLLOWING THE DATE OF ITS SERVICE, OR WITHIN THE TIME FRAME AUTHORIZED BY FED.R.CIV.P. 6(b), SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING THE FACTUAL FINDINGS OR THE LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT, EXCEPT UPON GROUNDS OF PLAIN ERROR.** *DOUGLASS V. UNITED SERVICES AUTOMOBILE ASSOCIATION*, 79 F.3D 1415 (5TH CIR. 1996).

Signed December 30, 2007, at Lafayette, Louisiana.

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE